Pino v. Cardone Capital. Good morning, and may it please the Court, Raj Mathur of Sussman Godfrey on behalf of Appellant Luis Pino. If I may, I'd like to reserve three minutes for rebuttal. The District Court's decision should be reversed because it misapplied Rule 8's liberal pleading standard. At every step, the lower court construed Pino's allegations in favor of Cardone, the examples Fund 5's acquisition of the Delray property and Cardone's projection of a 15% IRR hits this home. And I'd like to begin, if I may, with Fund 5's acquisition of Delray, in part because it's undisputed in this appeal that Cardone's defenses, like Bespeak's Caution Doctrine and Puffery, do not apply to those allegations. The funds told investors that their strategy was to acquire properties at below market prices. That was false. And in support of that allegation, we point to the specific fact that just weeks after Fund 5 issued its offering document, it acquired the Delray property for more than $20 million above market value. And that allegation is supported by tax assessor records, which indicate that the fair market value, what the records called the, quote, market total value of the Delray property, is $71 million. And the fund acquired Delray for $94 million. I guess I'd be more interested in the internal rate of return, the distribution allegations. Certainly, Your Honor. So Cardone repeatedly promised investors a 15% internal rate of return before he made that projection. The SEC had told him that he had no reasonable basis to do so. How many months? About six months, Your Honor. Thank you. The SEC's letter was in June of 2018. And the SEC also told Cardone that he could make that projection to investors in Fund 5's offering document if he could justify it. And that's at page 297 of the record. Cardone did not even try. He removed the representation, but nonetheless continued to make it. Does this argument extend to the distributions, too? Or is it just about the 15%? This argument is about the rate of return, the IRR projection, Your Honor. The district court, however, disregarded the SEC's determination by relying on Cardone's purported real estate experience. But that is really a non sequitur. Cardone's general real estate experience does not permit him to make any projection. And indeed, it's undisputed that none of Cardone's previous equity funds had in fact obtained a 15% IRR. They had not. And that's at page 293 of the record. Additionally, the SEC, in reaching its determination, considered those very facts. Let me interrupt you. When you say the SEC made its determination, I'm concerned that you're elevating that beyond what it actually was. They're sort of editor of the offering circular. They're not acting in any official capacity that is dispositive on whether this is a fraudulent representation, are they? It's true, Your Honor, that the SEC does not affirmatively approve or endorse an offering document. But it does police the edges. It enforces what issuers cannot represent to investors. And that's what the SEC concluded here, that because Cardone had no basis to make a projection of a 15% IRR, he could not include it in the fund's offering document. Okay. The distinction between Fund 5 and Fund 6 is very mushy in this record. Was there a similar representation for Fund 6? It's mushy, Your Honor, because Cardone himself did not often distinguish between the two, and he made projections related to both funds. Okay. So was this representation in the offering circular for Fund 6, and did the SEC comment on that? No, Your Honor. He did not include the 15% IRR projection in Fund 6's offering document. But in 2019, he repeatedly made that very projection on Social Security. I mean, is it a suggestion it wasn't in Fund 6's offering document because the SEC had already said, don't put it in Fund 5? I think that's certainly a fair inference to draw, Your Honor, especially given that Cardone did not push back on the agency's earlier determination. He simply removed it from Fund 5's offering document. Okay. What allegations have you brought forward on the distributions, not the IRR, but the distributions to allege that Cardone didn't have a reasonable basis for those ones? I think the primary allegation, Your Honor, is Mr. Pino's performance itself. So Cardone projected that investors could obtain an 8% annual distributions. It's undisputed that our friends on the other side suggest that that somehow voiced ex-post facts on a prior statement. But in reality, it just goes to the reasonable basis, I think, of the projection. And certainly after the benefit of discovery, we expect that there will be additional facts supporting that allegation. But Mr. Pino's performance alone is sufficient at this stage, given that it's half of the projection, to state a claim under Rule 8's liberal pleading standard. Well, that's what I was asking, if it is really possible to disaggregate the IRR from the distribution, given that a lot of these statements were made at the same time. And whether the SEC allegations are limited to the IRR or also sort of bleed over into the distribution piece. I think there is some of that, Your Honor. As you're suggesting, Cardone often made those strategies for both of the equity funds at issue here. Can I just ask you, I mean, this is somewhat to switch gears, but on the statutory seller issue, what is the import of that? Because you have multiple defendants here, including the funds, but also Cardone and Cardone Capital. So what is the significance of that issue just for the case as a whole here? It's undisputed, for purposes of this appeal, that the two funds are statutory sellers, because they passed legal title. Right, so what does it matter here? We may need to answer this question, but I'm just trying to figure out what the import of it is in this case. I think it affects whether Grant Cardone and Cardone Capital are statutory sellers, and under this court's precedence, they are. To start, they solicited investments in the two equity funds. But is it going to, before you get into that, is it going to change your recovery? Does it affect discovery? What is the practical, so you have four defendants, this one affects two of them, and I'm just trying to understand, what is this going to mean for the case if they're in or out? Sure, I think practically it would affect discovery, Your Honor, and it would relate to the fact that many of the particular projections we point to in the complaint were made by Cardone and Cardone Capital themselves. So it may affect liability also? I don't think so, Your Honor, because the statements here were part of the overall funds solicitation strategy. So I don't think it would necessarily affect liability. Even though you won't be able to show that each of the defendants made each of the representations? No, Your Honor, because I don't think that's required under the statute. And we also think that the plain text of the statute supports our reading of the statutory seller requirement and the Eleventh Circuit's recent decision in BitConnect, which we submitted in our Rule 28J letter to which Cardone proffered no response, I think catalogs the statutory text, the history, decades of precedent that support not imposing this sort of direct solicitation requirement. Broad solicitations, the social media is sort of the new form of it, but radio and television have long been held sufficient to satisfy the statutory seller requirement. Is it your position that the trial court should not have looked at Cardone, Grant Cardone's track record, that that was improper at this stage for him to look at it at all? I think it was acceptable for the court to look at it, Your Honor. In what way was it acceptable for him to look at it? The court could take judicial notice of the contents of the SEC filings, the fact that Cardone was making that representation. But the error here was that the lower court accepted those statements. The truth. That's true. Correct, Your Honor. So you're saying it was acceptable for him to look, but not for the purpose of validating representations about past conduct? Certainly, Your Honor. And that's true. So it's just judicial notice that the representations were made. Correct, Your Honor. And I think even the incorporation by reference doctrine doesn't help Cardone under this court's recent decision in COJA. It's clear that because those factual representations go to the heart of the factual dispute here, whether they in fact have a reasonable basis to make these projections, the court was not free to accept them as true. If I may, I'd also like to address the application of the Bespeak's Caution Doctrine. It's undisputed here that none of the Instagram posts at issue contained any cautionary language. They did not. Cardone also did not tell investors that they should look to the fund's offering documents for necessary cautionary language in making their investment decision. He did not do that in his hour-long YouTube video, and he did not say that in any of his— Is there any cross-referencing? Or should I think of this as two parallel streams of communication? There is a cross-reference at the bottom of the Instagram post, Your Honor. So it was not included in the oral statements, but the Instagram posts say that our offering circular, which is part of the offering statement, may be found at a particular link, and that's at paragraph 22. So how do I reconcile that with the statement you just made about them not referring— Did I misunderstand your statement? My point, Your Honor, was that Cardone himself did not tell investors when making these projections that they should look to the offering documents for cautionary language. And I think understanding why that matters—or it's helpful to look to the PSLRA statutory safe harbor, to which this Court has often analogized the Bespeak's Caution Doctrine, to understand that distinction. And the statutory safe harbor, which is not at issue in this case, requires that the oral statement identifies the document or the portion thereof that contains the additional information about those factors relating to the forward-looking statement. That's at 15 U.S.C. 78U-5, and Cardone did not meet that standard here. In addition, even if the Court were to consider the cautionary language, we think it's the type of language that this Court has repeatedly rejected as boilerplate and generic. The Court's decision in Gray v. First Winthrop Corporation is on point on that issue. There, just as here, a real estate syndicator pointed to generic and general risks applicable to all real estate investments. And this Court held that that is insufficient as a matter of law. I think at best, Your Honor, the cautionary language raises a fact dispute, especially here where it's directly contradictory. On the one hand, Cardone is telling investors that he's Nostradamus. He's predicting the future. These returns are guaranteed. And on the other, he's saying they may lose all their money. At best, I think a reasonable investor – it's a fact question whether a reasonable investor could have been misled by those projections. And that's particularly true given the nature of the offering here. Regulation A permits issuers like Cardone to target both accredited and unaccredited investors like Mr. Pino. And I think the Court should consider that in crafting the scope of its – Did your client see all these YouTubes and the Instagrams? Is there allegations that he reviewed those? Section 12a2 does not require reliance, Your Honors. And we think that's – Is the answer to Judge Brett's question no? At least in the allegations in the complaint, I didn't see it. I don't see it. That's correct, Your Honor. But we don't need to allege that. And I think Section 12a2 takes a particularly broad approach to securities liability. It requires a material misrepresentation or omission, I think, precisely to deter the sort of conduct that we have in this case. Do you want to reserve some time? I would. Thank you, Your Honor. You bet. Thank you. Good morning, Your Honors, and may it please the Court. My name is Ann Voights, and I represent appellees in this matter. This Court should affirm the District Court's well-reasoned decision. I'd like to point to something that the plaintiff said in his reply brief. He said there are lots of questions that can only be answered after discovery. But that gets it precisely wrong. There's a stay of discovery under the PSLRA because the plaintiff is supposed to have the answers before he files, not after. The District Court correctly found here that the plaintiff had failed to allege a material misrepresentation, that in any event the forward-looking statements were protected by the Bespeak's Caution Doctrine. And plaintiff's response is to argue instead that there should be inferences based on no facts that are actually included in the allegations, and that this Court should reach a conclusion that other circuit courts have rejected by saying that a statement here made in social media should be that the Bespeak's Caution Doctrine shouldn't apply to that in this case because those posts which explicitly reference the offering circular didn't themselves include the language about risk. So some posts reference the offering circular, but some of the social media that's alleged to be misleading didn't? So all of the tests, the water communications that plaintiffs talk to, they say, include a reference to the offering circular. This is not, as plaintiff claimed in his brief, a case where there's simply an SEC filing buried somewhere and you have to find risk factors within hundreds of pages. We think this Court should consider the particular investment structure here. It's an LLC, so you can't just see the social media post and go, say, to E-Trade and buy the stock. You have to get a subscription agreement. The subscription agreement incorporates the offering circular. The test the water communications included a link to the offering circular. And those offering circulars weren't, as they contend, hundreds of pages of obscure boilerplate language. Ten pages were devoted to the risks in great detail. They explained, for example, that distributions would be made, but that there was no guarantee that you would get any distribution. They explained there wasn't a sinking fund set aside to make sure that there would be distributions and that distributions were in the sole discretion of the funds. What are the limits of this? Because you have these statements in the risk disclosure language. On the other hand, you have statements in the social media posts that are fairly assertive and promising, you know, hard number returns. And so how do those – is there a limit to when the speaks-caution doctrine stops providing the protection? So the speaks-caution, I think there is a limit, but it's not one that kicks in here. Why not? Because the warnings here were very specific. They were not boilerplate. They were tailored to these things. They look boilerplate to me. So I respectfully disagree, I think, Your Honor. Sure, but can you walk me through why? I think one could reach the opposite conclusion as a fairer statement. I don't know that I may have made mine, but I'd like to hear what you have to say about that. Of course. First, I think part of what plaintiff is doing is conflating boilerplate with common risks. The fact that there are risks that apply across a number of real estate investment vehicles doesn't make them boilerplate or inapplicable. Second, the disclosures here went into great detail about the fact that there could be, for example, you could be at risk of losing your entire investment. And they walked through the explanation that you could end up with lower rents. You could end up with less demand. The expenses to rehabilitate some of these properties could be far more than expected. Right. And so if you flip it around the other way, I think that's going to be true of any real estate investment. Right. So if those types of disclosures, which are common, are included, does that mean on the other side, the sky's the limit for what kinds of promises can be made? No, I think they aren't. And I think even if you look at the language of, for example, the YouTube video that they talk about, he said all of this depends on me picking properties correctly. It depends on the market not turning south. It depends on all these other things. So even within some of those things, there was cautionary language itself. And there was in detail an explanation, not just in those 10-page risk sections, but throughout the explanation of how they were approaching their strategy, the things that might affect it, the concerns that could come around. And I think, again, if the court looks at what that target IRR is, I think it helps to understand it as really this is what you would get. It's an annualized yield. This is what you get over the life of a 10-year investment in real estate. So it is putting your principal in. It is hopefully selling the properties at a profit, plus the distributions that you got over a period of time. What do you say about the trial court crediting Grant Cardone's investment history by looking at prior SEC filings? Is that something the judge should have done at this stage of the litigation? Yes, absolutely, because if this court looks, for example, in Marder and in other cases, this court has said that it is acceptable in a motion to dismiss to accept the facts in documents incorporated by reference as true, particularly where there's no dispute over the authenticity, and there's been no dispute over the authentication here, and where they haven't actually disputed the facts. They're not saying, no, in fact, he doesn't have 30 years of experience in real estate. They're just saying that this court has to cover its eyes. No, they're saying that it is disputed how successful he was in his 30 years of history. They are disputing that. I think they've never disputed that in a complaint, Your Honor. So your position is that the plaintiff validated the contents of the SEC filings as opposed to the fact that they were filings? I think if they had disputed and said, we disagree, that we think this is a misstatement. He hasn't, in fact. He's only had two years, or he's never invested. That would be one thing. But they haven't actually disputed that. What they've said is you can't look at it, and that's a very different proposition, and it's not one that this court has previously heard. I think you're saying you can't. I think the argument is that the court erred by deeming them true. It's one thing to take judicial notice of the fact that the statements weren't made in quite another to decide that they are irrefutable, which is what Rule 201 would require. We wouldn't say they're irrefutable, but we would say they're unrefuted here. Well, okay. But if we're talking about judicial notice to really look at the, as you know very, very well, to take judicial notice of the truth of those statements, they would have to be not capable of dispute, and that's just not the situation here. You're making a different argument, it seems to me, and not really pushing back on judicial notice so much as You're making an argument under incorporation. That's correct. Okay. And about the SEC point, because even if crediting Mr. Cardone's experience was proper, on the other side of the ledger is still the SEC's informing him to take this statement out. Sure. And I think, first off, it's important to think about what the SEC said and when they said it. So you asked a question about when it was said in relation to things, and I disagree with my friend on the other side of the aisle. In fact, the SEC's letter was in July of 2018. So two of the social media statements that sort of projected specific IRRs and that were tied to specific funds, as opposed to sort of more general wealth management, were in September 4th of 2019 and October of 2019. And the SEC's finding, what they actually said, was because the fund hadn't started operating, it didn't have a basis for those projections. So what the offering circular said was it said, we are basing this only on his prior experience, and these subsequent statements were after the fund had begun to operate. So we think the what was said and when it was said are relevant to assessing whether there was no reasonable basis for Mr. Cardone to make those representations. But even if this court thinks that there wasn't a reasonable basis, again, those are forward-looking projections. They're entitled to the speaks-caution doctrine. And the offering circular was extremely clear about the basis for their expectations, that it was based on him. They were very clear about the fact that an investor could lose all of their money. I missed a word that you said. Very clear on the expectations that they were based on what? What did you say? They were very clear that the basis for this was Mr. Cardone's experience. They gave details about how the other funds had done. And I'd like to respond to Plaintiff's point, if I might, when they say, well, those funds haven't done that well. Again, because it's premature to make that assessment, these are long-term investment vehicles. The idea is not that you will make that in one year. The idea is that you will make it over the life of the investment. Can I ask you on the statutory seller point the same question I asked Mr. Mather, which is what is the upshot of this issue in this case? Because there are already two other defendants who are sellers. And so what effect would this have on the case as a whole? I think it would considerably narrow it because it would take Mr. Cardone and Cardone Capital out of the picture. And I think in this case it's significant what the district court relied on was the fact that Mr. Pino never said that he heard any of these statements, that he was directly solicited. The only thing that he apparently went to was a wealth management speech, and that's it. And so I think in the absence of those allegations, when it comes to the statutory seller point, that's not enough to meet the threshold here. So you're saying he had to have not fallen. I mean, it seems either you're a seller or you're not, and whether somebody heard the statements is a separate issue. Because the one avenue that's being argued is that he was directly solicited, and I think Mr. Pino is framing it as the fact that there are mass communications means that therefore that's not a bar to it being a direct solicitation. Even if this court agrees with that, there has to be some connection between those mass communications and Mr. Pino in this instance. And there aren't those allegations in this case. You mean reliance as opposed to as a matter of causation? For the statutory seller point, yes. So you just disagree with BitConnect in the outcome of that? Yes, we do. If I could address one other point, Your Honors, which is quickly, to address the reference to Gray. All of the cases on which plaintiff relies, including Gray, are cases where there were actually facts alleged that would have made those statements untrue. So, for example, in Gray, there was a statement about whether the property would be fully leased within two years, and it was based on a false representation about how many units had already been leased. Similarly, in other cases, there were facts of which the speaker was aware that made it clear that there was no reasonable basis. There are no such representations here. As far as the ‑‑ I think counsel's opening line had to do with the representation about buying properties below market. So are you relying on the fact that the property hadn't been acquired? Were you relying on the temporal sequence? So three points to that, to the Delray property, if I might, Your Honor. First, Mr. Pino bought after the supplement came out that disclosed the acquisition of the Delray property. So that's the temporal timeline that I've got. That is the temporal timeline. Okay. Second, there's also the fact that if you look at the language of the offering circular again, they specifically say the overall strategy is intended to buy properties that are either below or at market, but it doesn't sort of commit that every property will be. And so a single data point is a disrecord found, even if you credit their assumption that ‑‑ Well, they allege the $20 million data point, right? They allege a big data point. Right. But that is an example, I think, that even if you thought that that was ‑‑ even if you were forced to credit that as true, that that is a case where a single data point doesn't indicate ‑‑ it doesn't make untrue their representation. This was the general strategy. What's your third response? So the third response is we have the timing. We have the overall strategy. And then third is the response that if you look at the way that what they're relying on, it's a tax appraiser's value, which is not the same. They haven't alleged that it's the same as sort of the fair market value. For pleading purposes, that's not sufficient? It is not sufficient here, particularly because, again, even in the statements he represented, he might choose incorrectly. They might pick the wrong properties. They might make the wrong estimation about what the appropriate price was. And they were very clear about the fact that there could potentially be conflicts of interest. They were very clear about the fees that Mr. Cardone would earn, either through acquisition or ultimately the much greater fees he would earn if ultimately the investment worked out for everyone. I think the question, or at least my understanding of the question, was slightly different because as pled, it was that the property missed the mark by 20 million. And I appreciate that that's an assessed value as opposed to a praised value. But is it your position that that wasn't sufficient for purposes of pleading? Yes, for all the reasons both I've said here and the reasons that the district court set forth in its order. Finally, I'd simply, if the court has no further questions, I'm certainly happy to submit. I'd just say that the point that plaintiff makes about having more questions than answers gets the order wrong. This court should conclude that there were no material misstatements, that in any event the bespeaks caution doctrine applies, and that for purposes of the statutory seller provision, Mr. Cardone and Cardone Capital do not qualify. Hang on one second. Let me just make sure we're good. It looks like we are. Thank you for your argument. Thank you very much, Counsel. Thank you very much, Your Honors. Thank you, Your Honor. Three responses. First, several of Cardone's arguments ask this court to resolve factual disputes. Cardone claims that the prior fund's performance, for example, gives him a sufficient basis to project a 15% IRR. But that's a disputed issue. There's been no discovery on that. Similarly, he says that about a year passed between the SEC's determination and his projection of a 15% IRR, and there could have been a positive performance by Fund 5 in that gap. Again, there's no discovery on that. The SEC offering documents, of course, don't speak to that issue, nor does the complaint. Those are issues that can only be resolved on remand after discovery. Second, Judge Rest, you asked, what's the limit to? Since you're mentioning discovery, the first thing opposing counsel said when she came to the podium was to remind us of the stay of discovery. You haven't really spoken to that. Sure, Your Honor. That stay would only apply during the pendency of the motion to dismiss. If this court were to reverse, we would certainly be able to proceed to discovery. But I think what she's talking about is the effect of the statute, as you know, as opposed to in other types of cases where there's this finite universe and we look at it differently for purposes of getting past the 12B6. Do you want to speak to that? It doesn't seem to me that you're differentiating the discovery that's needed, in this case, from any other type of action. No, I don't think we are, Your Honor. Again, the liberal standard of Rule 8 applies here. As to the limits of Cardone's arguments on the bespeak's caution doctrine, I don't think there are very many. I would point the court to the temporal aspect of this. Months passed between the fund's offering documents and the projections at issue here. On Cardone's arguments, years could have passed. So five years after an offering document is issued, that cautionary language would still insulate, as a matter of law, projections made. We think that that misconstrues the limited nature of the bespeak's caution doctrine inquiry for purposes of a motion to dismiss and is improper. Finally, Your Honor, I would just point to this court's decision in Apple Computers in which it laid out a disjunctive three-part test for whether a projection is misleading. And one of those is whether the projection lacks an objectively reasonable basis. So Cardone's arguments about subjective falsity are not relevant here. Thank you, Your Honor. Thank you. Thank you all. We'll go ahead and stand in recess for the day. Thank you for your arguments and for your very excellent briefing. All rise. Hear ye, hear ye. All persons having had business before the Honorable, the United States Court of Appeals for the Ninth Circuit, will now depart. This court for this session now stands adjourned.
judges: CHRISTEN, BRESS, Lynn